**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232

Kerry B. Brownlee (*pro hac vice*)
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391
*Attorneys for Plaintiff*
*Intenze Products, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| INTENZE PRODUCTS, INC. <br> *Plaintiff* <br><br> v. <br><br> TCM SUPPLY CORPORATION d/b/a WORLDWIDE TATTOO SUPPLY d/b/a XTREME INKS; and ROCK LEE <br> *Defendant* | 23:CV-02265-RGK-PD <br><br> Trademark Infringement/Unfair Competition <br><br> **FIRST AMENDED COMPLAINT** <br><br> **Demand for Jury Trial** |

   Intenze Products, Inc. ("Intenze" or "Plaintiff"), a New Jersey corporation, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.     This case involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; unregistered trademark infringement and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)); and related state and common law claims, arising from Defendant TCM Supply Corporation d/b/a Worldwide Tattoo Supply d/b/a Xtreme Inks ("TCM") and Defendant Rock Lee's ("Lee") (collectively, "Defendants") infringement of Plaintiff's INTENZE Marks (as defined *infra*), and use of the INTENZE Tag Line (as defined *infra*) in an attempt to deliberately mislead consumers.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121 because this is a trademark action that arises under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.     This Court has general and/or specific personal jurisdiction over Defendants because, upon information and belief, TCM is a California corporation, with its principal place of business in this judicial district, Lee is an individual residing within the State of California, with his principal place of business and residence in this judicial district, and both Defendants conduct business, on a continuous and systematic basis, throughout the State of California and in this judicial district, and/or otherwise

avail themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      Venue for this action is proper in the United States District Court for the Central District of California, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and harm to Plaintiff has occurred in this district. Alternatively, as noted *supra*, this Court has personal jurisdiction over Defendants.

## **THE PARTIES**

5.      Intenze is a corporation that is organized and existing under the laws of the State of New Jersey, with an address of 215 Route 17 South, Rochelle Park, New Jersey 07662.

6.      Upon information and belief, TCM is a California corporation, with its principal place of business at 15410 Stafford Street, City of Industry, California 91744.

7.      Upon information and belief, Lee is an individual, with places of business at 8620 Airport Blvd., Los Angeles, California 90045 and 15410 Stafford Street, Industry, California, 91744, who is believed to reside at 1837 12th Street, Unit 5, Santa Monica, California 90404.

8.      Upon information and belief, Lee was, and is, an officer, director, principal, shareholder and/or owner of TCM.

9.      Defendants enriched themselves by the fraudulent and illegal conduct, as alleged herein, while Plaintiff suffered enormous financial injury.

10.     Upon information and belief, and at all times relevant hereto, TCM was, and is, under the de facto control and served, and serves, as the alter ego of Lee. Upon information and belief, Lee is a moving and conscious force behind the infringement that is the subject of this lawsuit.

11.     Upon information and belief, adherence to the fiction of the existence of TCM as separate and distinct from Lee would permit an abuse of the corporate privilege and would permit an injustice in that Lee would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

12.     Upon information and belief, since the time of its creation, now, and at all times relevant to this Complaint, such a unity of interest and ownership existed, and currently exists, between TCM and Lee such that separate personalities did not, and do not, in reality exist.

## **GENERAL ALLEGATIONS**
### **Plaintiff and Its Well-Known Intenze Ink**

13.     Plaintiff is a world-renowned manufacturer, developer, marketer and distributor of tattoo ink. Plaintiff's line of tattoo ink is called INTENZE ("INTENZE Ink").

14.     The INTENZE Ink comes in a variety of colors and sets, including a neon set, flesh tone set, and pastel set, as depicted below, among many others:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**INTENZE Ink Neon Set**



**INTENZE Ink Flesh Tone Set**



**INTENZE Ink Pastel Set**

-4-

15.     Plaintiff's INTENZE Ink has been certified, and audited, as meeting the United States' and EU's highest quality standards.

16.     All INTENZE Ink is manufactured by Plaintiff at, and distributed from, its factory in Las Vegas.

17.     Plaintiff was the first tattoo ink manufacturer to sterilize tattoo ink, and to aid in setting regulations for sterilization throughout the industry. There is no safer, more sterile tattoo ink available.

18.     INTENZE Ink is also the world's highest quality tattoo ink. INTENZE Ink features unique blends of scientifically formulated pigments, which have proven themselves as the easiest to apply and longest lasting tattoo pigments on the market.

19.     Intenze has gained significant common law trademark and other rights in its INTENZE trademark and lines of INTENZE Ink through its use, advertising and promotion of the same.

20.     Intenze has used the tag line "Advanced Tattoo Ink" on or in connection with the INTENZE Ink since at least as early as 2009 (the "INTENZE Tag Line").

21.     For example, the INTENZE Tag Line appears prominently on Intenze's website, available at https://intenzetattooink.com, as depicted below, as well as on the labels and packaging for the INTENZE Ink, examples of which also appear below:









22.     Intenze has also protected its valuable rights by filing for and obtaining a number of federal trademark registrations, including, but not limited to, the following incontestable U.S. Trademark Reg. Nos.: 4,090,110, covering INTENZE for goods in

Class 2 ("tattoo pigments, tattoo colors, tattoo inks; tattoo ink sets; tattoo ink shading solutions; tattoo ink color mixing solutions") and Class 3 ("tattoo cleansers"), used in commerce since at least as early as April 30, 1999 with respect to Class 2, and since at least as early as September 30, 2007 with respect to Class 3; and 3,785,439, covering ZUPER BLACK for goods in Class 2 ("[t]attoo pigments, tattoo colors, tattoo inks"), used in commerce since at least as early as May 9, 2008 (the "INTENZE Marks"). True and correct copies of the registration certificates for the INTENZE Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

23.     The success of the INTENZE Ink is due in part to Plaintiff's marketing and promotional efforts, including via social media, paid search advertising, national and international magazines, and sponsorships at tattoo conventions, industry events and trade shows.

24.     Plaintiff has expended substantial time, money and effort in developing and amassing consumer recognition, awareness and goodwill in and associated with the INTENZE Ink, INTENZE Tag Line, and INTENZE Marks.

25.     Plaintiff's success is also due to its high quality pigments and the extensive testing and sterilization procedures used in the manufacturing of INTENZE Ink.

26.     In addition, Plaintiff owes a substantial amount of the success of the INTENZE Ink to its consumers, and the word-of-mouth buzz that its consumers have generated.

27.     Plaintiff's marketing and promotional efforts, the quality of the INTENZE Ink, and the word-of-mouth buzz generated by consumers, have prominently placed the INTENZE Ink, INTENZE Tag Line, and INTENZE Marks in the minds of the public. Retailers, retail buyers, tattoo artists, consumers, and the members of the public have become familiar with the same, and associate the foregoing exclusively with Plaintiff.

28.     Plaintiff and its INTENZE Tag Line and INTENZE Marks have acquired a valuable reputation and goodwill among the public as a result of such associations (i.e., acquired distinctiveness or secondary meaning).

29.     Intenze has gone to great lengths to protect its interests in and to its INTENZE Tag Line, and INTENZE Marks. Defendants are not, and have never been, authorized by Intenze or any of its authorized agents to use Plaintiff's INTENZE Tag Line or INTENZE Marks, or any confusingly similar marks.

**Defendants' Wrongful and Infringing Conduct**

30.     In light of Plaintiff's success with its INTENZE Ink, Plaintiff and its INTENZE Ink have become targets for unscrupulous individuals and entities, who wish to take a free ride on the goodwill, reputation and fame Plaintiff has amassed in its INTENZE Ink, INTENZE Tag Line, and INTENZE Mark.

31.     Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing,

displaying, offering for sale, and/or selling products bearing the INTENZE Tag Line and/or one or more of the INTENZE Marks, and/or products in packaging and/or containing labels bearing the INTENZE Tag Line and/or one or more of the INTENZE Marks, and/or bearing marks that are confusingly similar thereto (collectively hereinafter referred to as, "Infringing Product(s)" and "Infringing Mark(s)", respectively) to U.S. consumers (including those located in the State of California) through, at the very least, Defendants' websites, located at https://xtremeinks.com and www.worldwidetattoo.com ("Defendants' Website(s)").

32.     By way of example, a side-by-side comparison of one of Defendants' Infringing Products, to the relevant INTENZE Ink, which appears below, evidences the clear willfulness of Defendants' conduct:

| **Infringing Product Example** | **Relevant INTENZE Ink** |
|---|---|
|  |  |

33.    Not only does the Infringing Product bear the INTENZE Tag Line, but it also conspicuously bears a mark that is, at the very least, confusingly similar to one of the INTENZE Marks.

34.    In a further attempt to mislead consumers, Defendants have used one or more of the INTENZE Marks in connection with the advertisement and promotion of one or more of Defendants' Websites, and the products featured thereon (including Infringing Products), including as paid sponsored keywords and/or in sponsored advertisements, as evidenced by the below search results on Google:



35.    Defendants are also deliberately offering color combinations and/or sets similar to those of Plaintiff, such as neon, flesh tone, and pastel sets in the same, or at

the very least, similar, shades as Plaintiff. For example, Defendants' neon set appears below:



36.    Defendants are selling the Infringing Products alongside Plaintiff's authentic INTENZE Ink through at least one of Defendants' Websites. True and correct screenshots of Defendants' Website, located at www.worldwidetattoo.com, evidencing the same are attached hereto as **Exhibit B**.

37.    In fact, Defendants have been dealers of the INTENZE Ink, including specifically, the Zuper Black INTENZE Ink, consistently since at least as early as 2011, and have offered for sale and/or sold the same via Defendants' Website, located at www.worldwidetattoo.com, since that time.

38.    On December 20, 2022, Plaintiff's counsel sent Defendants a cease and desist letter (the "C&D"), which unquestionably put Defendants on clear notice of their infringing actions. A true and correct copy of the C&D, which was confirmed as delivered by Fed Ex, is attached hereto as **Exhibit C**.

39.    Despite having prior notice of Plaintiff, the INTENZE Tag Line and INTENZE Marks, and having been put on formal notice via the C&D, Defendants have

continued their infringing conduct, as set forth herein.

40.    Defendants are not, and have never been, authorized by Intenze or any of its authorized agents to use the INTENZE Tag Line, or any of the INTENZE Marks on or in connection with the Infringing Products, or otherwise.

41.    By Defendants' dealing in Infringing Products (including, without limitation, manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products), Defendants have violated Intenze's exclusive rights in the INTENZE Tag Line and/or INTENZE Marks, and have used marks that are confusingly similar to, identical to and/or constitute infringement thereof in order to confuse consumers into believing that Defendants' Infringing Products are INTENZE Ink and/or that Defendants are affiliated with Intenze, and aid in the promotion of Defendants' business and its sales of Infringing Products.

42.    Defendants' conduct began long after INTENZE's adoption and use of the INTENZE Tag Line and INTENZE Marks, after Intenze obtained the federal registrations covering the INTENZE Marks, as alleged above, and after the INTENZE Ink, INTENZE Tag Line, and INTENZE Marks became well-known to the purchasing public.

43.    Upon information and belief, prior to and contemporaneous with its infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its INTENZE Tag Line and INTENZE Marks, of the fame and incalculable goodwill

associated therewith, and of the popularity and success of the INTENZE Ink, and in bad faith adopted the INTENZE Tag Line and/or INTENZE Marks.

44.     Defendants have been engaging in the illegal and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Intenze's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Intenze, the INTENZE Ink, INTENZE Tag Line and/or INTENZE Marks.

45.     In fact, prior to manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products, through industry events, among other things, Lee was, and remains, unquestionably familiar with Plaintiff, its INTENZE Ink, INTENZE Tag Line and INTENZE Marks.

46.     Moreover, as noted herein,  Defendants are distributors of INTENZE Ink and thus, Defendants' knowledge of Plaintiff, its INTENZE Ink, INTENZE Tag Line and INTENZE Marks is without question.

47.     Further, even after receiving the C&D, and the institution of this lawsuit, Defendants have brazenly continued to use the Infringing Marks and/or manufacture, advertise, market, promote, distribute, display, offer for sale and/or sell Infringing Products.

48.     Defendants' infringing actions, as alleged herein, have caused, and will continue to cause, confusion, mistake, economic loss and have deceived, and will continue to deceive consumers, the public, and the trade with respect to the source or

origin of Defendants' Infringing Products and/or Defendants' business(es), thereby causing consumers to erroneously believe that such Infringing Products and/or Defendants' business(es) are licensed by or otherwise associated with Plaintiff, and damaging Plaintiff.

49.     In engaging in these actions, Defendants have, among other things, willfully and in bad faith infringed the INTENZE Marks and INTENZE Tag Line, and committed unfair competition, and in doing so, have caused, and unless enjoined, will continue to cause, irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

50.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     Plaintiff has continuously used the INTENZE Marks in interstate commerce since on or before the dates of first use, as reflected in the certificates of registration attached hereto as **Exhibit A**.

52.     Plaintiff, as the owner of all rights, title and interest in and to its INTENZE Marks has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

53.     Upon information and belief, Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal

trademark registrations for the INTENZE Marks.

54.     Defendants did not seek and thus, inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the INTENZE Marks, to use the INTENZE Marks and/or marks that are confusingly similar thereto, and/or deal in and commercially manufacture, advertise, market, promote, distribute, display, offer for sale and/or sell Infringing Products and/or related products bearing the INTENZE Marks into the stream of commerce.

55.     Defendants knowingly and intentionally used one or more of the INTENZE Marks and/or the Infringing Marks in connection with Defendants' business(es) and/or manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, bearing and/or utilizing the INTENZE Marks and/or the Infringing Marks.

56.     Defendants' egregious and intentional use of the INTENZE Marks and/or Infringing Marks in commerce on or in connection with Defendants' business(es) and/or the Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of Defendants' business(es) and/or the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are INTENZE Ink or Defendants' business(es) and Infringing Products are otherwise associated with, or authorized by, Plaintiff.

57.     Defendants' actions have been deliberate and committed with knowledge

of Plaintiff's rights and goodwill in the INTENZE Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

58.     Defendants' continued knowing, and intentional use of the INTENZE Marks and/or Infringing Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered INTENZE Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the INTENZE Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable INTENZE Marks.

60.     Based on Defendants' actions, as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Unregistered Trademark Infringement, False Designation of Origin & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

61.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.     Plaintiff, as the owner of all right, title and interest in and to the INTENZE Tag Line and INTENZE Marks, has standing to maintain an action for unregistered trademark infringement, false designation of origin and unfair competition under the Lanham Act § 43(a) (15 U.S.C. § 1125).

63.     The INTENZE Tag Line and INTENZE Marks are inherently distinctive and/or have acquired distinctiveness.

64.     Defendants knowingly and willfully used in commerce marketing and promotional materials utilizing the INTENZE Tag Line, INTENZE Marks and/or the Infringing Marks, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacture, advertisement, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are INTENZE Ink or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of

-17-

such Infringing Products, and/or Defendants' business, allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the INTENZE Tag Line and/or INTENZE Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

65.     By manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products that are identical and/or confusingly similar to the INTENZE Ink using the INTENZE Tag Line, INTENZE Marks and/or the Infringing Marks, Defendants have traded off the extensive goodwill of Plaintiff and its INTENZE Ink and did in fact induce, and intends to, and will continue to induce customers to purchase Defendants' Infringing Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its INTENZE Ink, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

66.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of the INTENZE Tag Line and Infringing Marks would cause confusion, mistake or deception among purchasers, users and the public.

67.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the

goodwill and reputation Plaintiff, its INTENZE Ink, INTENZE Tag Line, and INTENZE Marks.

68.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its INTENZE Ink and by depriving Plaintiff of the value of its INTENZE Tag Line and/or INTENZE Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the same.

69.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Unfair Competition)
### [Cal. Bus. & Prof. Code § 17200]

70.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71.    California Business and Professions Code § 17200 states that unfair competition shall mean and include any "unlawful, unfair or fraudulent business act or

practice."

72.     Defendants' unlawful and improper actions, as set forth above, are likely to cause confusion, mistake, and/or deception as to the source, origin, and/or sponsorship of Defendants' business(es) and/or Defendants' Infringing Products, and to falsely mislead consumers into believing that the Infringing Products themselves, along with Defendants' business(es), are those of, affiliated with, and/or approved by Plaintiff.

73.     Accordingly, Defendants' unauthorized use of the INTENZE Tag Line and/or INTENZE Marks and/or the Infringing Marks constitutes unfair competition in violation of California Business and Professionals Code § 17200.

74.     Defendants' acts of unfair competition have caused Plaintiff to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

75.     In light of the foregoing, Plaintiff is entitled to an injunction under California Business and Professions Code § 17200 restraining Defendants from engaging in further such unlawful conduct, as well as to restitution of those amounts unlawfully obtained by Defendants through their wrongful conduct.

## FOURTH CAUSE OF ACTION
### (Unfair Competition)
### [California Common Law]

76.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.     By using the INTENZE Tag Line and/or INTENZE Marks and/or Infringing Marks and/or manufacturing, advertising, marketing, promoting, distributing,

displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products, Defendants have traded off the extensive goodwill of Plaintiff and its INTENZE Ink to induce, and did induce and intends and will continue to induce, customers to purchase its Infringing Products, thereby directly competing with Plaintiff and engaging in unfair competition in violation of the common law of the State of California. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales, and consumer recognition.

78.    Defendants' use of the INTENZE Tag Line and/or INTENZE Marks and/or Infringing Marks and their advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products and/or Defendants' business(es).

79.    Defendants knew, or by the exercise of reasonable care should have known, that their use of the INTENZE Tag Line and/or INTENZE Marks and/or Infringing Marks and their advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Infringing Products and their continued use of the INTENZE Tag Line and/or INTENZE Marks and/or Infringing Marks and their continued advertising, marketing, promotion, distribution, display,

offering for sale, sale and/or otherwise dealing in the Infringing Products would cause confusion and mistake, or deceive purchasers, users, and the public.

80.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and its competitive position while benefiting Defendants.

81.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its INTENZE Ink, and of the value of its INTENZE Tag Line and INTENZE Marks as commercial assets, in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

82.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from its infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants, inclusive and each of them, as follows:

A. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered INTENZE Marks, and such other compensatory damages as the

Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

B. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for unregistered trademark infringement, false designation of origin and unfair competition under 15 U.S.C. §1125(a);

C. For restitution of those amounts unlawfully obtained by Defendants through their illegal and infringing conduct, as alleged herein, pursuant to California Business and Professionals Code § 17200;

D. For damages to be proven at trial for common law unfair competition;

E. For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Infringing Products;

    ii. directly or indirectly infringing in any manner any of the INTENZE Marks and/or the INTENZE Tag Line;

iii. using any reproduction, counterfeit, copy or colorable imitation of the INTENZE Marks and/or the INTENZE Tag Line, including the Infringing Marks, to identify any goods or services not authorized by Plaintiff;

iv. using any of Plaintiff's trademarks, including, without limitation, the INTENZE Marks and/or INTENZE Tag Line, or any other marks that are confusingly similar thereto, on or in connection with Defendants' business and/or Defendants' manufacture, advertisement, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in Infringing Products;

v. using any false designation of origin or false description, or engaging in any action that is likely to cause confusion, cause mistake, and/or to deceive members of the trade and/or the public as to the affiliation, connection, origin or association of any product manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiff and/or as to the sponsorship or approval of any product manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair, or fraudulent business acts or

-24-
FIRST AMENDED COMPLAINT

practices, including, without limitation, the actions described herein, including the use of the INTENZE Marks and/or INTENZE Tag Line and the advertising of and/or dealing in any Infringing Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. secreting, destroying, altering, removing, or otherwise dealing with the Infringing Products or any books or records that contain any information relating to the manufacture, advertisement, marketing, promotion, distribution, display, offering for sale, and/or sale of Infringing Products;

x. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

xi. instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

F. For an order of the Court requiring that Defendants deliver up to Plaintiff for destruction any and all Infringing Products and any and all advertising and

promotional materials in the possession, custody or control of Defendants that infringe the INTENZE Marks and/or INTENZE Tag Line, or bear any of the Infringing Marks;

G. For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacture, advertisement, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Infringing Products as described herein, including prejudgment interest;

H. For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

I. For an award of exemplary or punitive damages in an amount to be determined by the Court;

J. For Plaintiff's reasonable attorneys' fees;

K. For all costs of suit; and

L. For such other and further relief as the Court may deem just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues and claims so triable.

Dated: June 9, 2023                    Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY: /S Kerry B. Brownlee_____

Kerry B. Brownlee (*pro hac vice*)
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391
*Attorneys for Plaintiff*
*Intenze Products, Inc.*


Peter J. Farnese (SBN 251204)
pjf@beshadafarneselaw.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232

FIRST AMENDED COMPLAINT